UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY CLIFFORD GATES,

        Petitioner,

                             Case No.  1:13-cv-715
v.                            Hon.  Gordon J.  Quist

BONITA J.  HOFFNER,

        Respondent.

_____/

### REPORT AND RECOMMENDATION

        Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has

filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.[1]

### I.      Background

        Following a jury trial in the Calhoun County Circuit Court, petitioner was convicted

of first-degree home invasion, M.C.L. § 750.11a(2), felonious assault, M.C.L. § 750.82, and

aggravated stalking, M.C.L. § 750.411i.  *People v.  Gates*, No.  283640, 2009 WL 485399 at *1

(Mich. App.  Feb. 26, 2009).   The Michigan Court of Appeals summarized the underlying facts as

follows:

        Defendant was charged with the above offenses, as well as with interfering
with electronic communications, MCL 750.540(5)(a), as a result of an incident at the
home of complainant, his former girlfriend, during the early morning hours of April
2, 2007.  Complainant testified that defendant entered her home without permission

---

[1] The convictions at issue in this habeas action arose from crimes committed in April 2007 in
Calhoun County Circuit Court No. 2007-2155 FH.  *See* Petition (ECF No. 1, PageID.1).  Petitioner filed a
separate habeas action, which this Court denied, challenging convictions which arose from crimes committed
against the victim in January 2007 in Calhoun County Circuit Court No. 2007-145 FH.  *See Gates v. Hoffner*,
1:13-cv-713 (Judgment) (ECF No. 41).

and in violation of a personal protection order (PPO), and threatened her with a knife for a period exceeding one hour. Complainant acknowledged that defendant had been at her home on April 1, 2007, on a prearranged errand to collect some personal belongings, [FN 1] and that she and defendant had agreed that he could return on a later date to collect more items. Complainant indicated that defendant agreed that he would telephone to arrange the future visit. Complainant denied that she telephoned defendant early on April 2, 2007, and invited him to her home. Complainant testified that following the incident at her home, she received two letters from defendant.

Defendant testified that he went to complainant's home during the early morning hours of April 2, 2007, but contended that complainant had telephoned him and invited him to come to the residence. Defendant acknowledged that he and complainant argued while he was at the residence, but denied that he possessed a knife or that he threatened complainant at any time during the incident. Defendant denied that he possessed a knife, that he threatened complainant at any time during the incident, or that he broke a glass door pane to gain entrance to the home. Defendant further testified that a glass door pane broke when he opened the door to the sunroom. Defendant admitted that he wrote the letters complainant received in April 2007, but asserted that he did not realize that the PPO prohibited him from contacting complainant by letter.

[FN 1] The prosecutor did not contend that visit violated the terms of the PPO.

*Id.*

Petitioner was sentenced on January 14, 2008. *See* Sent. Trans. (ECF No. 17-9). At that time, the Court found that petitioner's criminal history included 12 prior misdemeanors and 2 prior felonies. *Id.* at PageID.796-797. The prosecutor argued for a consecutive, rather than a concurrent sentence.[2] Because Gates ultimately received consecutive sentences, the Court will set forth the prosecutor's argument on this matter:

Your Honor, specifically regarding this case the Court has heard the facts on this case. If there was ever a case for consecutive sentencing, this would be the case.

---

[2] On October 1, 2007, petitioner was sentenced to 8 to 30 years for first-degree home invasion (second habitual offender) and three months for domestic violence for the crimes committed against the victim in January 2007. *See Gates v. Hoffner*, 1:13-cv-713 (Judgment of Sentence) (ECF No. 16-7, PageID.986).

The defendant in this case not once but twice broke into this victim's home and each time it became more serious. In the second [current] offense specifically a knife was used and the Court heard the proofs and how he for an hour-and-a-half at least threatened to kill her family, her kids and her new boyfriend.

This was planned out. This wasn't like the first incident. There's been a gap of four months between that. Obviously this defendant cannot seem to let this person go and move on with his life.

The court has discretion in this case but in this situation we had the defendant on bond at the time when he committed this offense. Additionally, we have an offense of a home invasion first which also would lend to a discretionary sentence of - of it being consecutive with the felonious assault and the aggravated stalking.

Based on that, we think that the recommendation is appropriate and we'd ask that consecutive sentencing be issued in this case. This isn't the first offense by the defendant. Hopefully it should be the last, but for the safety of the community and specifically this victim, we ask that you follow the recommendation.

*Id*. at PageID.797-798.

Defense counsel disagreed with the entry of a consecutive sentence, stating "[a]s the Court is well aware that in both those instances alcohol was a triggering point in reference to the behavior of my client" and asked the court to sentence petitioner 12 to 30 years to run concurrent with the earlier sentence related to the victim. *Id*. at PageID.798-799. In his statement to the court at sentencing, petitioner did not acknowledge wrongdoing or remorse. Rather, he challenged the evidence supporting his conviction, claimed procedural irregularities ("I asked for a bench trial, I asked for a change of venue"), and claimed ineffective assistance of counsel (stating that he only met his attorney "for 45 minutes to an hour"). *Id*. at PageID.799-800.

The trial judge noted that under the facts of this case, petitioner was subject to a consecutive sentence:

It is an unfortunate fact that you were on bond for in essence the same thing at the time these offenses occurred and so that makes - the law says that that may

3

have consecutive sentencings under those circumstances as the prosecutor is requesting and as the probation department's recommending for the reasons they've set forth in the presentence report and I think that's a legitimate concern that they have and legitimate reasoning for why these sentences should be imposed that they're recommending and that they be consecutive to the previous offense that you're already serving time for.

So since the recommendation appears to be appropriate and appears to be within the logic of the presentence report in regard to your background and the impact on the victim and the circumstances of your criminal history and so on, I'm going to follow the recommendation of the probation department on each of the three counts.

*Id.* at PageID.801-802.

The trial judge sentenced petitioner on Count 1 (first-degree home invasion) to 144 to 360 months without credit for time served and to be served consecutive to the sentence petitioner was serving, and concurrently with the sentences for Count 2 (felonious assault, habitual offender second, 36 to 72 months) and Count 3 (aggravated stalking, habitual offender second, 47 to 90 months). *Id.* at PageID.802-803. The trial judge also stated that the sentence included attorney's fees and court costs while petitioner was on parole. *Id.* at PageID.805.

Petitioner, through counsel, raised one issue in his direct appeal to the Michigan Court of Appeals:

I.      Is Defendant-Appellant entitled to a new trial where he was denied effective assistance of counsel.

*See* Appellate Brief (ECF No. 17-10, PageID.817). The Michigan Court of Appeals affirmed petitioner's conviction and sentence. *See Gates*, 2009 WL 485399 at *1.

Petitioner's pro per application for leave to appeal to the Michigan Supreme Court raised this issue and the following new claims (in his words):

4

I.      Defendant-appellant was denied his constitutional right to effective assistance of appellate and trial counsel due to counsel's failure to:

      A.      Effectively cross-examine the complainant regarding her inconsistencies on the witness stand.

      B.      Investigate and call witnesses which could impeach complainant's version of the events.

      C.      Challenge trial counsel's ineffective ommission to compel the production of the 911 phone call and lease to complainant's apartment during discovery pursuant MCR 6.201 and MRE 803(14) as this would have impuged complainant's testimony on the stand.

      D.      Counsel failed to sufficiently meet with defendant-appellant before trial to prepare or at appellate level which prejudiced defendant-appellant and fell below objective constitutional and professional standards.

II.     Challenge the lower court's abuse of discretion due to the excessive disproportionate sentence given in accordance with *People v. Milbourn*, 435 Mich. 630, 461 NW2d 1; (1990).

III.    The combined effect of cumulative errors in the case was so great that defendant-appellant was prejudiced and could not receive a fair outcome.

IV.     Defendant-appellant was denied the effective assistance of trial and appellate counsel due to counsel's failure to object to defendant being forced to wear jail clothing during his trial and appellate counsel's failure to raise this issue.

*See* Application for leave (ECF No. 17-11, PageID.874-881).  The Michigan Supreme Court denied the application.  *People v. Gates*, No. 138686 (Aug. 6, 2009) (ECF No. 17-11, PageID.873).

After his unsuccessful direct appeal, petitioner filed a 193-page motion for relief from judgment in the Calhoun County Circuit Court.  See Motion (ECF No. 17-19, PageID.1197-1389).  Petitioner's motion raised the following claims (in his words):

I. The first degree home invasion, felonious assault and aggravated stalking conviction was neither supported by the weight of the evidence, nor by legally sufficient evidence, to prove beyond a reasonable doubt that Mr. Gates was guilty of committing the offenses.

II. The circuit court violated defendant-appellant Gates' Sixth Amendment constitutional right to counsel when it replaced defense counsel without obtaining defendant's consent or waiver.  This structural error entitles defendant to a new trial.

III. Mr. Gates's due process right was violated where the variance between what defendant was charged with and the evidence presented at trial resulted in a prejudicial effect upon defendant's ability to present a defense.

IV. Counsel's absence during critical stages of the proceedings denide Mr. Gates his constitutional right to effective assestance of counsel.

  A. Counsel's absence during the pre-trial stage necessitates reversal.

  B. Counsel's absence during the over night recess necessitates reversal.

  C. Counsel's absence at plea stage necssitates reversal.

V. The defendant was denied the constitutional rights afforded him under the Sixth Amendment, and the Michigan Constitution of 1963, Art 1, § 20, to effective assistance of trial counsel.  Fact, with several subparts contained herein.

  A. Mr. Gates was denied the effective assistance of counsel and the presumption of innocince guaranteed by due process due to counsel's failure to object to defendant being forced to wear prison clothing and being flank by armed prison guards.

  B. Mr. Gates is entitled to a new trial where he was denied effective assistance of counsel by the late appointment and illness of counsel.

6

      C.     Defendant was denied his constitutional right to the effectice assistance of counsel by his attorney's failure to investigate witnesses, failure to object to the admission of evedence without a proper foundation.

VI.     The trial judge abuse his descrtion when at sentencing ordering the defendant to pay attornt fees and court cost when parole but then in the judgment of sentence required it immediately.

VII.    Mr. Gates was denied his state and federal right to the effective assistance of counsel on appeal due to appellate counsel's failure to raise a claim of ineffective assistanve of trial counsel in addition to the issues raised herin.

Motion for relief from judgment (ECF No. 17-19, PageID.1200-1201).

The trial court denied this motion in a cursory order entered April 1, 2011 stating in

pertinent part:

This Court has had the opportunity to review the Defendant's Motion for Relief from Judgment.  Nearly all the grounds raised by Defendant in his Motion, for a variety of reasons, relate to evidentiary issues at trial, other trial/pre-trial related issues, and alleged ineffective assistance by trial counsel.

The Defendant has the burden of establishing entitlement to the relief requested.  In this matter, after reviewing the Motion and attached Brief as well as the Circuit Court file, this Court finds that the Defendant is not entitled to the relief requested.  Most of the issues raised by Defendant could have been raised on appeal from the convictions and sentencing.

Defendant has failed to show good cause for his failure to raise those grounds on appeal, nor has defendant shown actual prejudice.  *See* MCR 6.508(D).  The other issues raised by Defendant (including the ineffective assistance of appellate counsel) are without merit.

Based upon the foregoing, this Court finds, pursuant to MCR 6.504(B), from the face of the materials submitted by Defendant, that he is not entitled to relief.  An order denying the motion may enter without directing further proceedings.

Order (April 1, 2011) (ECF No. 17-20, PageID.1391).

Petitioner filed a delayed application for leave to appeal this order to the Michigan Court of Appeals, which that court denied on November 13, 2012 "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *See People v. Gates*, No. 308197 (Mich. App.) (ECF No. 17-12, PageID.950, 969-970).   Petitioner's application for leave to appeal to the Michigan Supreme Court was denied on June 25, 2013 because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *See People v. Gates*, No. 146236 (Mich.) (ECF No. 17-13, PageID.1026, 1029-1035). Petitioner also sought to file a successive motion for relief from judgment, which the Calhoun County Circuit Court denied on April 1, 2013. *See* Opinion and Order (ECF No. 17-23).

In his petition for writ of habeas corpus, Gates raised eight issues with sub-issues as follows (in his words):

I.      Did trial counsel's failure to procure and introduce the complainant's telephone records deprive the petitioner of a fair trial, in violation of US Const. Am. VI; Mich Const. (1963), Art. 1 § 20?

II.     Were the first degree home invasion, felonious assault and aggrevated stalking convictions unsupported by the weight of the evidence, or by legally sufficient evidence to prove beyond a reasonable doubt that petitioner was guilty of committing the offenses?

III.    Did the circuit court violate petitioner's Sixth Amendment constitutional right to counsel when it replaced defense counsel without obtaining petitioner's consent or waiver?  And does this structural error entitle petitioner to a new trial?

IV.     Was petitioner's due process right violated where the variance between what petitioner was charged with and the evidence presented at trial resulted in a prejudicial effect upon petitioner's ability to present a defense?

8

V.    Did counsel's absence during critical stages of the proceedings deny petitioner his constitutional right to effective assistance of counsel in violation of US Const.  Am.  VI?

    A.    Does counsel's absence during the pretrial stage necessitate a reversal?

    B.    Does counsel's absense during overnight recesses necessitate reversal?

    C.    Does counsel's absence at plea stage necessitate reversal?

VI.    Was the petitioner denied the right to effective assistance of trial counsel as afforded under the Sixth Amendment to the United States Constitution and the Michigan Constitution of 1963, Art 1, § 20?

    A.    Was petitioner denied the right to effective assistance of counsel and the presumption of innocence guaranteed by due process by counsel's failure to object to petitioner being forced to wear prison clothing and being flanked by armed prison guards during trial in violation of US Const.  Ams.  VI and XIV.

    B.    Is petitioner is entitled to a new trial where he was denied effective assistance of counsel by the late appointment and illness of counsel?

VII.    Was petitioner denied his constitutional right to the effective assistance of counsel by his attorney's failure to investigate witnesses, failure to object to the admission of evidence without a proper foundation?

VIII.    Was petitioner denied his state and federal right to the effective assistance of appellate counsel due to counsel's failure to raise a claim of ineffective assistance of trial counsel in addition to the issues raised herein.

*See* Petition (ECF No. 1); Memorandum (Memo) (ECF No. 2, PageID.60-62).

    **II.    Procedural default**

9

Respondent contends that petitioner's Issues II, III, IV, V, VI, and VII are procedurally defaulted. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "A habeas petitioner's claim will be deemed procedurally defaulted if each of the following four factors is met: (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default." *Shahideh v. McKee*, 488 Fed. Appx. 963, 965 (6th Cir. 2012), citing *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir.2010). To make this determination, the Court looks to the last reasoned state court opinion explaining the rejection of petitioner's claims. *See Guilmette*, 624 F.3d at 290.

In this case, there is no opinion in the record addressing petitioner's 193-page motion for relief from judgment. Rather, the record consists of the trial court's two-page order denying the motion. Because the trial court's cryptic order does not even identify petitioner's claims which form the basis for the bulk of this habeas action, the Court cannot rely on it as a "reasoned" opinion addressing those claims. For this reason, the Court will address the merits of those claims. *See Storey v. Vasbinder,* 657 F.3d 372, 380 (6th Cir. 2011) (addressing the merits after observing that "[t]he extent to which these claims are procedurally defaulted is a nettlesome question; the extent to which they are meritless, much less so"); *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010)

10

(addressing the merits because "the cause-and-prejudice analysis adds nothing but complexity to the case").

### III.    Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in federal court, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  In the present case, petitioner has exhausted his state remedies with respect to his habeas claims.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 101-102 (2011). The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 776, 773 (2010) (internal quotation marks and citations omitted). This deferential standard "requires petitioner to show 'the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing [Supreme Court precedent] beyond any possibility for fairminded disagreement.'" *Blackmon v. Booker*, 696 F.3d 536, 538 (6th Cir. 2012), quoting *Harrington*, 562 U.S. at 103. Thus, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (internal quotation marks omitted).

Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause of § 2254(d)(1), "a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411.

12

Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.  "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102.  "If this standard is difficult to meet, that is because it was meant to be." *Id.*

A determination of a factual issue by a state court is presumed to be correct.  28 U.S.C. § 2254(e)(1).  A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous.  *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).  The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record.  *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

### IV.    Discussion

### A.    Ineffective Assistance of Trial Counsel

In Issues I, VI, and VII, petitioner contends that his trial counsel was ineffective.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687.  In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment.  *Id.* at 689-690.  "Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential', and when the two apply in tandem, review is 'doubly' so[.]" *Harrington*, 562 U.S. at 105 (internal citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

First, the court considers whether counsel's performance was deficient.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  "In this regard, the court will 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *O'Hara v.  Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994)(quoting *Strickland*, 466 U.S. at 689).

Second, the court determines whether counsel's deficient performance was prejudicial.  "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland*, 466 U.S. at 693.  "Even if a [petitioner] shows that particular errors of counsel were unreasonable, therefore, the [petitioner] must show they actually had an adverse effect on the defense." *Id*.  The

14

appropriate test is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

### 1.    Telephone Records (Issue I)

Petitioner contends that trial counsel was ineffective for failing to introduce telephone records related to the case at trial.  The Michigan Court of Appeals denied this claim as follows:

> [D]efendant asserts that he was denied the effective assistance of counsel at trial because defense counsel did not produce complainant's telephone records.  Defendant contends that those records would have shown that complainant telephoned him during the early morning hours of April 2, 2007, and thus would have supported his position at trial.
>
> Counsel's decisions regarding what evidence to present are presumed to be matters of trial strategy.  [*People v. Rockey*, 237 Mich. App. 74, 76; 601 NW2d 887 (Mich. App. 1999).]  We do not substitute our judgment for that of trial counsel on matters of trial strategy.  *People v. Rice (On Remand)*, 235 Mich. App 429, 445; 597 NW2d 843 (1999).  The telephone records, had they been presented, at most would have shown that a call from a number associated with complainant was placed to a number associated with defendant -- if indeed such a call was placed -- during the early morning hours of April 2, 2007.  The records would not have revealed the parties to the call or the content of the call.  Moreover, defendant presented his theory of the case via his testimony and defense counsel's argument.  This case presented a credibility contest between complainant and defendant.  And, defendant's assertion that if the jury had been presented with telephone records it would have concluded that he was testifying truthfully is based entirely on speculation.  Even if the jury had seen such records, and a call was registered, the context of the call would not be revealed.  Given defendant's entry into the home through the sunroom with a broken windowpane rather than an entry door, the jury would have been entitled to believe complainant's version of the events.  *People v. Milstead*, 250 Mich. App 391, 404; 648 NW2d 648 (2002).  We can presume that counsel's decision to not produce complainant's telephone records was a strategic decision, *Rockey, supra* at 76, and we decline to disturb it. *Rice, supra* at 445.
>
> Defendant has not established prejudice in that he has not shown that but for an error by counsel, it is reasonably probable that the outcome of the proceedings would have been different, [*People v. Carbin*, 463 Mich. 590, 600; 623 NW2d 884 (2001)], or that the result that did occur was fundamentally unfair or unreliable. [*People v. Odom*, 276 Mich. App. 407, 415; 740 NW2d 557 (2007).]  Defendant is not entitled to relief.

*Gates*, 2009 WL 485399 at *2.

15

The Michigan Court of Appeals utilized the appropriate standard of review. "Disagreement over trial strategy is not a basis for ineffective assistance of counsel." *Thomas v. Lecureux*, 8 Fed. Appx. 461, 464 (6th Cir. 2001), citing *Strickland*, 466 U.S. at 689.  Furthermore, petitioner was not prejudiced by this decision.  As the state court observed, the evidence at issue did not identify the parties to the call or the content of the call.  Given the facts of this case, including petitioner's method of entry into the complainant's residence, there is not a reasonable probability that the result of the proceeding would have been different if the telephone records had been admitted. *Strickland*, 466 U.S. at 694.

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to relief on this claim.

**2.    Failing to object to petitioner wearing prison clothing at trial (Issue VI. A.)**

While it is inconsistent with the Fourteenth Amendment for the state "[to] compel an accused to stand trial before a jury while dressed in identifiable prison clothes," the failure to object to being tried in prison clothes "is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Estelle v. Williams*, 425 U.S. 501, 513 (1976).  Here, petitioner contends that Attorney Marks was ineffective for failing make such an objection when petitioner was wearing prison clothes and flanked by guards during the trial.  Petitioner presents no evidence to support the claim that he was forced to wear identifiable prison clothing.  As discussed, petitioner had been sentenced to prison prior to the commencement of this trial in December 2007.

16

The writ to bring petitioner to the circuit court specifically stated, "JURY TRIAL - PLEASE BRING STREET CLOTHES."  Writ of Habeas Corpus (ECF No. 17-17, PageID.1194) (emphasis in original).  The in-court identifications of petitioner made no reference to him wearing prison clothing.  On the first day of trial, prosecution witness McClure identified petitioner as "wearing a khaki colored shirt" and the victim identified petitioner as wearing "[b]rown pants and shirt."  Trial Trans. I (ECF No. 17-6, PageID.480, 586).  On the second day of trial, prosecution witness Jones identified petitioner as "wearing all brown" and prosecution witness Mattens identified petitioner as "wearing the tan outfit seated at the defense table."  Trial Trans. II (ECF No. 17-7, PageID.680, 692-693.  Petitioner has not shown that he was wearing identifiable prison clothing or that any of the witnesses pointed out to the jury that he was wearing such clothing.

Finally, nothing in the trial court record indicates that petitioner was "flanked" by prison guards throughout the trial or that he was unfairly prejudiced by the presence of guards in the courtroom. *See Wilkens v. Lafler*, 487 Fed. Appx. 983, 989-90 (6th Cir. 2012) (observing that "[t]he Supreme Court has yet to address whether placing uniformed prison guards near a defendant during his trial inherently prejudices him," and that  "fairminded jurists could conclude that the presence of a few guards near [the criminal defendant] with Department of Corrections insignia fails to create an inherently prejudicial circumstance or an unacceptable risk of affecting the jury deliberations") (internal quotation marks omitted).

Under these circumstances, there was no basis for petitioner's trial counsel to object.  Counsel cannot be ineffective for failing to raise meritless or futile objections. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial"); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998)

17

("[c]ounsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel"). Accordingly, petitioner is not entitled to relief on this claim.

### 3.    Late appointment of counsel (VI. B.)

By way of background, petitioner's appointed counsel, Attorney McCarthy moved to withdraw from the case a few days before trial, providing the following explanation:

> Your Honor.  At this time I am moving to be allowed by the Court to withdraw from the representation of Mr. Gates.  I had a discussion with Mr. Gates downstairs that, while I'm not going to go into the exact content of it because of privilege, we have had a complete breakdown in the attorney-client relationship to the extent that I believe that it would not be in Mr.  Gates's interest or counsel's interest to proceed to trial together at this juncture at this point in time.
>
> I think that - I don't make this motion lightly.  I very rarely have made this motion in the past.  I would not be as - because Mr. Gates is in a position where the Court would have to appoint him a new counsel.  If I were the new counsel, I would not necessarily want to inherit perhaps a problem type of case or a problem client. I don't think that Mr.  Gates would necessarily be a problem client for a new attorney.  I think a fresh attorney with a fresh set of eyes would get along quite well with Mr.  Gates.  Through most of this case I've gotten along quite well with Mr. Gates but at this juncture, in light of our previous case, the 07-145 case where he was convicted, he's expressed to me that he would like a new attorney.  We are at loggerheads as far as discussing his case both strategically, intrinsically and to the extent  .  .  .  I think it really would be in his best interest as well as the interest of justice if he were appointed a new attorney and I'm relying essentially on the breakdown components of the Michigan Rules of Professional Conduct as well, Your Honor.

Motion Trans. (Oct. 17, 2007) (ECF No. 17-3, PageID.448-449).

At the hearing, petitioner made numerous complaints to the trial judge about Attorney McCarthy's representation in the earlier trial (involving the January 2007 home invasion) and McCarthy's work on the present matter (e.g., "I've expressed my innocence from day one and he's basically refusing to fight," "in the first case that we had there's a bunch of stuff that I asked him to bring up which I do have documented that he didn't bring up," "he sent me to the forensic center

18

when I said that I was not guilty of the charges," "he didn't subpoena the phone records when [the victim] said that she didn't call me on those days so that I would have looked a lot better," and "the police lying on the stand, I didn't think he went after that good enough"). *Id*. at PageID.450-452.

The state court permitted Attorney McCarthy to withdraw on October 27, 2007. *See* Order (ECF No. 17-16). The court appointed Attorney Marks to represent petitioner, and rescheduled petitioner's jury trial from October 23, 2007 to December 4, 2007. Motion Trans. (Oct. 17, 2007) at PageID.448, 454-456; Docket Sheet (ECF No 17-1, PageID.369-370). Attorney Marks filed an appearance and request for discovery on November 1, 2007 (ECF No. 17-15).

However, Attorney Marks was ill and unavailable to begin trial on December 4th. *See* Trial Trans. (Dec. 4, 2007) (ECF No. 17-5, PageID.470). Attorney James Sauber stood in for Attorney Marks and the trial was adjourned. *Id*. During the adjournment hearing, the Court noted that plaintiff "wishes to have a trial, and there's no resolution of this case." *Id*. At that time, Attorney Sauber placed a statement on the record regarding petitioner's rejection of a plea deal and request to go to trial:

> Your honor, if it please the Court, just to address that, the Court is aware that I've had conversations with the prosecutor and the Court and I did convey the offer to Mr. Gates. It was my understanding that there was a Cobbs agreement in this case for 12 -- a 12-year concurrent sentence. I did speak with Mr. Gates in the lockup in the holding cell and he said that -- he said to me that he understood the agreement and that if Mr. Marks was standing there rather than myself, that his statement would be the same thing, that he requested a trial.

*Id*.

Petitioner jury trial commenced on December 11, 2007. Petitioner contends that Attorney Marks should have requested another adjournment of the trial because there was inadequate time to prepare a defense, inadequate time to contact the additional defense witnesses, and as a result

19

he was denied an effective cross-examination.  Petitioner's contention is without merit.  As discussed in § IV.A.4., *infra*, the additional witnesses had nothing to offer in petitioner's defense.  Furthermore, the record reflects that defense counsel's cross-examination of the victim tested her credibility and counsel's closing arguments pointed out discrepancies in her testimony.  Trial Trans. II (ECF No. 17-7, PageID.620-643, 740-753).  Based on this record, petitioner was not prejudiced by the "late" appointment of his second counsel, Mr. Marks.  Accordingly, this claim should be denied.

### 4.      Failure to Investigate (Issue VII)

Petitioner contends that Attorney Marks failed to investigate his witnesses.  Memo (ECF No. 2, PageID.114).  The United States Supreme Court laid out the standard for habeas evaluation of a failure to investigate claim:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.  Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

*Strickland*, 466 U.S. at 691.

To support this contention, petitioner cites to "Appendix N" which he claims states that Attorney Marks never received all of the files from petitioner's first appointed counsel.  This claim is not supported by the cited appendix, which is a letter from Attorney Marks to the Attorney Grievance Commission dated over two years after the conclusion of trial.  *See* Appendix N (Marks Letter) (ECF No. 2-5, PageID.176).  This letter does not indicate what evidence Attorney Marks had or did not have at the time of trial.  In the letter, Attorney Marks stated that at the time he visited petitioner prior to trial at the Michigan Training Unit in Ionia, that "he [Gates] had all discoverable documents other than crime scene photographs, which totaled about 8 photographs."  *Id*.

Petitioner also provided affidavits from his mother, sister, and a friend.  Petitioner's sister, Ms. Dunsmore, stated in her affidavit that she went to the victim's house with petitioner on April 1, 2007.  Dunsmore Aff. (ECF No. 2-3, PageID.154-155).  However, Ms. Dunsmore's affidavit did not reference any events related to the crimes which occurred during the early morning of April 2, 2007.  *Id*.

Petitioner's mother, Ms. Permelia, provided an affidavit that corroborated the fact that petitioner and the victim met on April 1, 2007, but made no reference to the criminal activity which occurred on April 2, 2007.  *See* Permelia Aff. (ECF No. 2-4, PageID.165-166).  This affidavit weighs in on an unrelated controversy regarding ownership of items at complainant's house stating that "she [the victim] wouldn't let him have his air-compressor because she was going to work on her truck" and Ms. Permelia's opinion that "she [the victim] was being a **BITCH**, rubbing his nose in it, pushing his buttons."  *Id*. at PageID.166 (emphasis in original).  Ms. Permelia also stated that she made a phone call to Attorney Marks' office and left a message. While the contents of the message

are not entirely clear from the affidavit, it appears that she identified herself as petitioner's mother, mentioned that petitioner's sister was with petitioner and the victim "on the day in question," and left her phone number. However, Attorney Marks never returned the call. *Id*.

In another document entitled "affidavit," Steven Shea stated: that he was a friend of petitioner; that he was visiting with petitioner on the night of April 1, 2007; that petitioner told Shea's girlfriend "that he was suffering from panic attacks and that when he was in the Calhoun County Jail he was taking medicatoin [*sic*] for his attacks; that "[s]he tells him that she also suffers from panic attacks and gives him some of her medication . . . a pill called Xanex [*sic*]"; that Gates took the pills; and that "[a] while later he get [*sic*] a phone call from [the victim] and leaves." *See* Shea Aff. (ECF No. 2-5, PageID.173).[3] This document did not state if Mr. Shea had spoken to petitioner's attorney prior to trial. In this regard, it appears that a "Steve Shay" who lived in the "Lakeview area" appeared on the initial witness list filed by petitioner's first appointed counsel. *See* Defendant's Witness List (ECF No. 2-4, PageID.168-169).

These affidavits submitted by petitioner do not provide evidence that Attorney Marks failed to investigate the witnesses. While Ms. Permelia stated that she left a message and that Attorney Marks did not return the call does not lead to the conclusion that Marks did not consider

---

[3] The Court notes that Shea's document was not a properly executed affidavit. While Shea's document included a notary's signature, it did not contain a notary jurat vouching for the truthfulness of the signed record. *See* M.C.L. § 55.265(a) ("'Jurat' means a certification by a notary public that a signer, whose identity is personally known to the notary public or proven on the basis of satisfactory evidence, has made in the presence of the notary public a voluntary signature and taken an oath or affirmation vouching for the truthfulness of the signed record."). "The absence of a jurat or other evidence of verification requires a finding that the document fails to constitute an affidavit." *Knobloch v. Langholz*, No. 231070, 2002 WL 1360388 at *2 (Mich. App. June 21, 2002) (unpublished). "A purported affidavit, on which perjury could not be assigned if it was wilfully false, would not, in law, be an affidavit at all." *Kelley v. City of Flint*, 251 Mich. 691, 696; 232 N.W. 407 (1930), quoting *Clarke v. Wayne Circuit Judge*, 193 Mich. 33; 159 NW 387 (1916) (syllabus).

Permelia or Dunsmore as witnesses.  Furthermore, petitioner has failed to demonstrate prejudice. At most, these affidavits appear to confirm the victim's testimony at trial of the events which occurred during the day on April 1, 2007.  None of this proposed testimony would have aided petitioner's case.  Mr. Shea's statement that petitioner received a phone call from the victim sometime on the night of April 1st conflicts with petitioner's trial testimony that the victim called him at about 1:30 or 1:45 a.m. on April 2nd.  Trial Trans. II (ECF No. 17-7, PageID.706).  While petitioner testified that he stopped at the store, "got her the candy bar she wanted and a triple black Smirnoff and I got my drink," and that he had not been drinking prior to that time, he made no mention of visiting with Mr. Shea, taking prescription medication (Xanax) from Shea's girlfriend, or receiving a telephone call from the victim while with Shea and Shea's girlfriend. Trial Trans. II (ECF No. 17-7, PageID.706).  In addition, some of the evidence, e.g., petitioner's mother referring to the victim as a "bitch" and petitioner taking prescription medication from Shea's girlfriend, would likely have been detrimental to petitioner's case without aiding in his defense.  Furthermore, the record reflects that Attorney Marks was actively engaged in making strategic decisions with petitioner, including the decision not to call one witness for the defense.[4]  Accordingly, petitioner is not entitled to relief on this claim.

### 5.    Failure to object to 911 Tape (Issue VII)

Petitioner contends that trial counsel failed to subject the prosecution's case to meaningful adversarial testing when he did not object to the admission of the 911 recording for lack

---

[4] At the close of the prosecution's case, when the Court asked Attorney Marks if he intended to call Mr. Shelby as a defense witness, Marks advised the Court that, "Your Honor, I've had the opportunity as far as to speak to my client in reference to Mr. Shelby. The testimony from Ms. Owusu-Agyei more or less clears up as far as to questions to which I would have asked that of Mr. Shelby so there's no need to call Mr. Shelby." Trial Trans. II (ECF No. 17-7, PageID.229).

of proper foundation.  Memo (ECF No. 2, PageID.116-119).  *See generally, United States v. Cronic*, 466 U.S. 648, 659 (1984) ("if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable").  Here, the witness who made the call stated that he recognized the 911 tape (People's proposed Exhibit No. 17), listened to the tape prior to coming to court, and it was a fair and accurate representation of what was stated and heard on April 2, 2007.  Trial Trans. II (ECF No. 17-7, PageID.660-661).  Petitioner's counsel did not object.  *Id.* at PageID.661.  After hearing the recording, petitioner's counsel cross-examined the witness regarding inconsistencies between the recording and the witness' prior testimony.  *Id.* at PageID.667-678.  Petitioner's counsel subjected this witness to meaningful adversarial testing with respect to the 911 call.  Accordingly, petitioner is not entitled to relief on this issue.

### B.    Counsel's absence during critical stages of the proceedings (Issue V)

Petitioner contends that he was denied his Sixth Amendment rights because his counsel was absent during three critical stages of the proceedings: the pretrial stage; overnight recesses; and the plea stage.  *See* Memo at PageID.97-107, 110-114.  A criminal defendant facing incarceration is guaranteed the right to counsel at all critical stages of the proceedings.  *King v. Bobby*, 433 F.3d 483, 490 (6th Cir. 2006).  As the Supreme Court explained in *Cronic*:

> [W]e begin by recognizing that the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.  Moreover, because we presume that the lawyer is competent to provide the guiding hand that the defendant needs, the burden rests on the accused to demonstrate a constitutional violation.  There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.

> Most obvious, of course, is the complete denial of counsel.  The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial.

*Cronic*, 466 U.S. at 658-59 (internal citations and footnotes omitted).  The phrase "critical stage" is used "to denote a step of a criminal proceeding, such as arraignment, that held significant consequences for the accused."  *Bell v. Cone*, 535 U.S. 685, 696 (2002).  "It is settled that a complete absence of counsel at a critical stage of a criminal proceeding is a per se Sixth Amendment violation warranting reversal of a conviction, a sentence, or both, as applicable, without analysis for prejudice or harmless error." *Van v.  Jones*, 475 F.3d 292, 312 (6th Cir.  2007).

### 1.    Ineffective assistance prior to trial (Issue V. A.)

On the first day of trial, outside of the presence of the jury, counsel stated on the record –  at petitioner's request –  that counsel had met with petitioner twice prior to trial:  the first time at the Michigan Reformatory for about an hour-and-a-half and the second time on the day of trial.  Trial Trans. I (ECF No. 17-6, PageID.532-533).  Petitioner stated in his memorandum that counsel did not have case files when they met, that counsel did not discuss strategy or defenses, and that petitioner's former counsel had the witness list.  Memo (ECF No. 2, PageID.100).  The record contains no evidence to support these claims.  Petitioner also contends that counsel advised him that "the best case scenario" if they lost was a nine year sentence and the worst case scenario 15 years, but "never made it known that it was a possibility that the sentence could be run consecutive" to his sentence for the January 2007 home invasion.  *Id*.  Similarly, petitioner has provided no evidence to support this claim regarding the sentencing issue.[5]

---

[5] Petitioner raised a similar claim against Attorney Sauber.  *See* § IV.B.3, *infra*.

Petitioner's contention that his lack of time spent with Attorney Marks amounted to a lack of counsel is without merit. "[B]revity of time spent in consultation, without more, does not establish that counsel was ineffective." *Easter v. Estelle*, 609 F.2d 756, 759 (5th Cir. 1980). As the court observed in *McGhee v. United States*, No. 1:04-CR-45, 2009 WL 595994 (E.D. Tenn. March 6, 2009):

> [T]he Court knows of no case establishing a minimum number of meetings counsel is required to attend with a criminal defendant in order for counsel to provide reasonably effective assistance of counsel. Nor has [the movant] directed the Court's attention to any cases constitutionally requiring a minimum number of times counsel must meet with a criminal defendant in preparation of his case. *See United States v. Olson*, 846 F.2d 1103, 1108 (7th Cir.) ("[A]n experienced attorney 'can get more out of one interview with a client than a neophyte lawyer.' ") (quoting *United States ex rel. Kleba v. McGinnis*, 796 F.2d 947, 954 (7th Cir.1986)), *cert denied*, 488 U.S. 850 (1988). Consequently, regardless of the number of times [the movant] met with counsel, the fact that he was provided with a sufficient opportunity to discuss his case is all that is constitutionally required.

*McGhee*, 2009 WL 595994 at *9. Furthermore, the issue of the consecutive sentence was raised at sentencing. Sent. Trans. (ECF No. 17-9, PageID.797-799). While petitioner complained about his counsel and the evidence at sentencing, he did not address the issue of the consecutive sentence. *Id.* at PageID.800-801. Accordingly, petitioner is not entitled to relief on this claim.

### 2.    Ineffective assistance during trial recess (Issue V. B.)

Petitioner stated that he was denied an attorney during the overnight recesses because he was transported for 1 to 1 1/2 hours from prison to the county jail for each day of trial. Memo (ECF No. 2, PageID.103-104). The Supreme Court addressed the significance of trial recesses in *Geders v. United States*, 425 U.S. 80 (1976):

> It is common practices during such recesses for an accused and counsel to discuss the events of the day's trial. Such recesses are often times of intensive work, with tactical decisions to be made and strategies to be reviewed. The lawyer may need to

26

> obtain from his client information made relevant by the day's testimony, or he may
> need to pursue inquiry along lines not fully explored earlier.  At the very least, the
> overnight recess during trial gives the defendant a chance to discuss with counsel the
> significance of the day's events.  Our cases recognize that the role of counsel is
> important precisely because ordinarily a defendant is ill-equipped to understand and
> deal with the trial process without a lawyer's guidance.

*Geders*, 425 U.S. at 88.  Given these considerations, the Supreme Court held " that an order

preventing petitioner from consulting his counsel 'about anything' during a 17-hour overnight recess

between his direct and cross-examination impinged upon his right to the assistance of counsel

guaranteed by the Sixth Amendment."  *Id*. at 91. Here, there was no such order banning petitioner

from meeting with his attorney during the evening recesses.  Accordingly, petitioner is not entitled

to relief on this claim.

### 3.    Ineffective assistance at the plea stage (Issue V. C)

Petitioner contends that he was deprived of counsel at the plea stage.  In support of

this claim, petitioner contends that Attorney Sauber was unfamiliar with petitioner's case, "had no

files,"  "blindly chose to concede the guidelines estimated by the prosecutor," "only spoke briefly

with the Petitioner in the holding cell," and "never made it known to the petitioner that the judge

could run his sentence consecutive to the sentence already being served."  Memo (ECF No. 2,

PageID.106) (emphasis omitted).  As discussed, *supra*, the proceeding at issue – the December 4th

hearing –  was in the nature of a status conference to discuss adjournment of trial due to the illness

of Mr. Marks.  At the time, stand-in counsel, Attorney Sauber, represented petitioner and indicated

to the state court that petitioner decided to proceed to trial.  Petitioner cites no authority for the

proposition that the December 4th hearing, which resulted in an adjournment of the trial due to the

illness of his appointed counsel Attorney Marks, was a critical stage of the trial.  On the contrary,

such a hearing has not been viewed as a critical stage. *See Lawson v. Smith*, No. 10-cv-477, 2014

WL 220816 at *12 (E.D. N.Y. May 27, 2014) (status conference regarding adjournment was not a critical stage of the proceedings) (citing *McKethan v. Mantello*, 522 F.3d 234, 238-39 (2d Cir. 2008)).  If the Court construed this as a hearing involving a plea negotiation rather than an adjournment, then the Court would reach the same result because "claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*." *Missouri v. Frye*, 566 U.S. 134, 140 (2012).  Furthermore, even if the December 4th hearing was a critical stage of the proceeding, allowing stand-in counsel during a critical stage does not require habeas relief "[b]ecause no United States Supreme Court precedent deals with the issue of 'stand-in' counsel, the Michigan Courts did not engage in an unreasonable application of Supreme Court precedent when they determined that [defendant] was not denied assistance of counsel."  *Carrol v. Renico*, 475 F.3d 708, 713-14 (6th Cir. 2007).  Accordingly, petitioner is not entitled to relief on this claim.

## C.    Insufficient Evidence (Issue II)

The Court construes petitioner's statement of Issue II as challenging the sufficiency of the evidence presented at trial with respect to (1) the first-degree home invasion, the felonious assault, and (3) the aggravated stalking.[6]  *See* Memo (ECF No. 2, PageID.77-83).  In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that Fourteenth Amendment's Due Process Clause

---

[6] To the extent that petitioner seeks relief because his convictions are "unsupported by the weight of the evidence," this is a claim brought under state law which is not cognizable on federal habeas review. *See, e.g., McCowen v. Palmer*, No. 1:15-cv-443, 2015 WL 2365988 at *2 (W.D. Mich. May 18, 2015) ("The Michigan courts apply the great-weight-of-the-evidence standard to determine whether to grant a new trial. *See People v. Lemmon*, 456 Mich. 625, 576 N.W.2d 129, 137 (Mich.1998). This question is distinct from the due-process guarantee offended by insufficient evidence and "does not implicate issues of a constitutional magnitude." *Id*. at 133 n. 8. As a consequence, a 'weight of the evidence claim' is purely a matter of state law and is not cognizable on habeas review."). Finally, to the extent that petitioner contests the sufficiency of the events which occurred on January 1, 2007, those events are not before the Court in this case.

protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364. Under *Jackson v. Virginia*, 443 U.S. 307 (1979), sufficient evidence supports a conviction if "after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis added).  In determining whether sufficient evidence exists to support a conviction, the reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution. *Wright v. West*, 505 U.S. 277, 296-97 (1992). *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them").  Finally, because both the *Jackson* standard and AEDPA apply to petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir.2008).

### 1.    Home Invasion

The trial court gave the following jury instruction to the charge of first-degree home invasion:

> First, that the defendant entered a dwelling without permission.  It does not matter whether the defendant got his entire body inside.  If the defendant put any part of his body into the dwelling without permission, that is enough to count as an entry.

> Second, that when the defendant entered, was present in or was leaving the dwelling, he committed the offense of assault.

And third, that when the defendant entered, was present in or was leaving the dwelling, another person was lawfully present in the dwelling.

Trial Trans. II (ECF No. 17-7, PageID.767).

With regard to this conviction, petitioner contends that there was insufficient evidence because he did not break into the dwelling. *See* Memo (ECF No. 2, PageID.77-78); Trial Trans. I (ECF No. 17-6, PageID.631-632). Petitioner's claim is without merit. Evidence was presented at trial that petitioner entered the dwelling without permission. In reviewing the facts of this case, the Michigan Court of Appeals summarized the evidence at trial finding that "[c]omplainant testified that defendant entered her home without permission and in violation of a personal protection order (PPO), and threatened her with a knife for a period exceeding one hour." *Gates*, 2009 WL 485399, at *1. This evidence is sufficient for a jury to find that petitioner was guilty of first-degree home invasion. Accordingly, petitioner is not entitled to relief on this claim.

### 2.  Felonious Assault

The trial court gave the following jury instruction to the charge of felonious assault:

First, that the defendant either attempted to commit a battery on Donna Kay Owusu-Agyei, the victim, or did an illegal act that caused the victim to reasonably fear an immediate battery. Again, a battery is a forceful or violent touching of the person or something closely connected with the person.

Second, that the defendant intended either to injure the victim or to make the victim reasonably fear an immediate battery.

Third, that at the time the defendant had the ability to commit a battery, appeared to have the ability or though that he had the ability.

And Fourth, that the defendant committed the assault with a knife.

Trial Trans. II at PageID.767-768.

Petitioner contends that the evidence was insufficient to convict him of felonious assault because of differences between the trial testimony and the physical evidence. Memo (ECF No. 2, PageID.79). Petitioner testified that throughout the early morning hours of April 2, 2007, he did not possess a knife or threaten the victim. Trial Trans. II (ECF No. 17-7, PageID.711). However, petitioner later identified the knife found at the scene as a three-inch long boning knife, with a curve to it, which his buddy "kinda just left there," and which petitioner used as "a bluegill filet knife." *Id*. Nevertheless, petitioner contends that the victim's testimony had a discrepancy as to whether the knife held to her throat had a serrated blade or a smooth blade, citing testimony from the victim that the knife held to her throat was serrated, and testimony from the deputy who recovered the knife who testified that she "didn't believe it is [serrated]" and identified the knife as a one-sided filet knife. Memo at PageID.79; Trial Trans. II at PageID.689. Petitioner contends that his conviction should be overturned because the victim's testimony regarding a serrated knife contradicts "indisputable physical facts." Memo at PageID.79-80.

Petitioner's argument does not focus on a lack of evidence, but points out a potential inconsistency in the victim's description of the knife used to assault her. During cross-examination, the victim explained what she meant by a "serrated knife," stating that it was "not serrated like a steak knife" and that it had "some kind of cut in it." Trial Trans. I at PageID.637. When defense counsel stated that it was a filet knife, the victim agreed. *Id*. She later explained that while she purchased the knife, she did not use it. *Id*. at PageID.638. Rather, petitioner used the knife "to filet fish when he and his friends went fishing." *Id*. The jury resolved these inconsistencies in the testimony against petitioner. It is not for this Court to redetermine witness credibility under the guise

of federal habeas review.  *See Marshall*, 459 U.S. at 434.  Sufficient evidence exists to convict

petitioner of felonious assault.  Accordingly, petitioner is not entitled to relief on this claim.

### 3.    Aggravated Stalking

The trial court gave the following jury instruction to the charge of aggravated

stalking:

> First, that the defendant committed two or more willful, separate and
> noncontinuous acts of unconsented contact with the victim  .  .  .

> Second, that the contact would cause a reasonable individual to suffer
> emotional distress.

> Third, that the contact caused the victim to suffer emotional distress.

> Fourth, that the contact would cause a reasonable individual to feel terrorized.

> Fifth, that the contact caused the victim to feel terrorized.

> And sixth, that the stalking was committed in violation of a restraining order
> of which the defendant had actual notice.

Trial Trans. II (ECF No. 17-7, PageID.770).

Petitioner contends that there is insufficient evidence to support this charge due to

the absence of two or more noncontinuous acts of unconsented contact with the victim, i.e., he was

a resident of the apartment during the time of the first unconsented contact, he was unprepared to

defend against the second contact because he was never bound over on that issue, and he had

permission for the third contact.  Memo (ECF No. 2, PageID.80-81).  Contrary to petitioner's claims,

there was sufficient evidence of two noncontinuous acts of unconsented contact with the victim.  The

record reflects that petitioner was found guilty of violating the PPO on February 6, 2007.  Trial

Trans. I at PageID.580-582; Trial Trans. II at PageID.240-242.  As discussed, *supra*, the evidence

at trial established that petitioner committed the second act consisting of the felonious assault on

April 2, 2007. Sufficient evidence exists to convict petitioner of aggravated stalking.  Accordingly, petitioner is not entitled to relief on this claim.

### C.    Withdrawal of appointed counsel (Issue III)

Petitioner contends that he was denied his Sixth Amendment right to counsel when the trial court permitted Attorney McCarthy to withdraw prior to trial without obtaining petitioner's consent or waiver.  The Sixth Amendment provides the right "to have the Assistance of Counsel for his defense."  While a defendant has the right to be represented by his counsel of choice, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006) (internal citations omitted). Accordingly, petitioner had no constitutional right to choose his appointed counsel.  Even if petitioner had retained counsel, at most he would require a hearing on the issue of counsel's requested withdrawal.  *See United States v. Treadway*, 328 F.3d 878, 887-88 (6th Cir. 2003) ("in the ordinary course, a criminal defendant should have notice and an opportunity to be heard when his attorney of choice seeks to withdraw from representation.").  Furthermore, petitioner's claim that he did not consent to the withdrawal of Attorney McCarthy is disingenuous.  As discussed, petitioner aired a number of complaints against Attorney McCarthy which supported McCarthy's motion to withdraw.  *See* Discussion, IV. A. 3., *supra*.  Here, the state court allowed Attorney McCarthy to withdraw after hearing McCarthy's arguments and petitioner's complaints, and then appointed petitioner a new attorney.  There was no constitutional violation.  Accordingly, petitioner is not entitled to relief on this claim.

### D.    Variance between charge and evidence (Issue IV)

33

Petitioner contends that his due process rights were violated "where the variance between what petitioner was charged with and the evidence presented at trial resulted in a prejudicial effect upon petitioner's ability to present a defense."  The gist of petitioner's claim is that he was unable to present a valid defense to the first-degree home invasion because he was charged with breaking and entering, but the prosecutor amended the charge to entering without permission.  Memo (ECF No. 2, PageID.91).

On April 2, 2007, petitioner was charged with four counts: (1) first-degree home invasion; (2) felonious assault; (3) interfering with electronic communications; and (4) aggravated stalking.  Felony Complaint (ECF No. 2-4, PageID.160-161).  The first-degree home invasion charge alleged in pertinent part:

> The complaining witness says that on the date and at the location described above, the defendant contrary to law  .  .  .  did break and enter and enter without permission a dwelling located at 115 CLAYTON STREET, and, while entering, present in, or exiting did commit an assault, and while entering, present in, or exiting the dwelling DONNAKAY OWOSU-AGYEI, was lawfully present therein; contrary to MCL 750.110a(2)  .  .  .

*Id.*

Petitioner was bound over on all four counts after a preliminary examination held on June 14, 2007.  Prel. Exam Trans. (ECF No. 17-2, PageID.438-442).  Count 1 of an amended felony information was filed on July 13, 2007 charged petitioner with first-degree home invasion, but omitted the charge that petitioner "did break and enter" the victim's dwelling:

> The prosecuting attorney for this County appears before the court and informs the court that on the date [04/02/2007] and location described above, the defendant  .  .  .  did enter without permission a dwelling located at 115 CLAYTON, and, while entering, present in, or exiting did commit an assault, and while entering, present in, or exiting the dwelling DONNAKAY OWOSU-AGYEI, was lawfully present therein; contrary to MCL 750.110a(2)  .  .  .

34

Amended Felony Information (July 12, 2007) (ECF No. 2-4, PageID.162).

At a hearing held on November 19, 2007, the prosecutor noted that to comply with the proofs at the preliminary examination, the operative dates should be January 2, 2007 through April 2, 2007. Hearing Trans. (ECF No. 17-4, PageID.461-463). The Court granted the motion to amend the dates. *Id*. At the commencement of petitioner's trial, the court gave the jury a preliminary instruction regarding the charged conduct for Count 1 consistent with the amended information and November 19, 2007 order:

> The charges that the prosecution has made against Mr. Gates are contained in a document called an Information and the Information in this case reads that on or about January 2nd, 2007 through April 2nd, 2007 in the Township of Pennfield in Calhoun County that Anthony Clifford Gates, Count 1, or Charge 1 if you will, did *enter without permission* a dwelling located at 115 Clayton and, while entering, present in, or exiting did commit an assault, and while entering, present in, or exiting the dwelling Donna Kay Owusu-Agyei was lawfully present therein.

Trial Trans. I (ECF No. 17-6, PageID.483) (emphasis added). As discussed, the final jury instruction for first-degree home invasion also referred to entering without permission (as opposed to breaking and entering):

> First, that the defendant *entered a dwelling without permission*. It does not matter whether the defendant got his entire body inside. If the defendant put any part of his body into the dwelling without permission, that is enough to count as an entry.

Trial Trans. II (ECF No. 17-7, PageID.767) (emphasis added).

Petitioner contends that he "was severely prejudiced when the prosecutor intentionally amended the information, giving the illusion Petitioner would not have to mount a defense to the breaking and entering." Memo (ECF No. 2, PageID.91). As an initial matter, petitioner was not prejudiced by the amended information; he had about five months to prepare for trial after the

amendment.  In addition, petitioner could not avoid defending against "breaking and entering," given the Michigan Supreme Court's statement that:

> It is impossible to commit the first-degree home invasion without first committing a breaking and entering without permission. The two crimes are distinguished by the intent to commit "a felony, larceny, or assault," once in the dwelling.

*People v. Silver*, 466 Mich. 386, 392, 646 N.W.2d 150 (2002).  *See People v. Klingbail*, No. 332903, 2017 WL 3173013 at *4 (Mich. App. July 25, 2017) ("breaking and entering without permission is a lesser included offense of first-degree home invasion"), citing *Silver*, 466 Mich. at 392.

Next, the amended felony information reflected the facts brought out during the preliminary examination, and the trial court's jury instructions were consistent with those amendments.  Contrary to petitioner's claim, there was no variance between the amended information and the first-degree home invasion charge for which he was tried.

Even if a variance existed, petitioner's claim would not be cognizable on federal habeas review because he was fairly informed about the charged offense.  As one court explained:

> A complaint or indictment need not be perfect under state law so long as it adequately informs the petitioner of the crime in sufficient detail so as to enable him or her to prepare a defense.  Therefore, an indictment "which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings."  *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir.1986). A claim of a variance between a criminal information and the evidence at the state court trial is not reviewable by way of federal habeas corpus. *See Anderson v. Love*, 681 F. Supp. 1279, 1283 (M.D. Tenn. 1986).

*Dell v. Straub*, 194 F. Supp. 2d 629, 653-54 (E.D. Mich. 2002).  Accordingly, petitioner is not entitled to relief on this claim.

### E.    Ineffective assistance of appellate counsel (Issue VIII)

Finally, petitioner contends that his appellate counsel was ineffective because there was no reasonable justification for appellate counsel omitting issues II-VII.  The Court disagrees.

36

There is no duty for appellate counsel to "raise every 'colorable' claim suggested by a client" and that doing so "would disserve the very goal of vigorous and effective advocacy [.]" *Jones v. Barnes*, 463 U.S. 745, 754 (1983).  Strategic and tactical decisions regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  Appellate counsel does not need to raise every nonfrivolous argument. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003).  "'[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986).  "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).  "Moreover, not only must the issue omitted be significant, but it must also be 'obvious.'" *Shelton v. McQuiggin*, 651 Fed. Appx. 311, 314 (6th Cir. 2016), citing *McFarland v. Yukins*, 356 F.3d 688, 711 (6th Cir. 2004) (listing factors relevant to determining whether appellate counsel was ineffective).

As discussed, *supra*, petitioner's claims raised in Issues II through VII were without merit. "[A]ppellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003), quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir.2001).  Furthermore, because these issues lacked merit, petitioner has failed to demonstrate that his appellate counsel ignored significant, obvious issues which were clearly stronger than those presented.  *Shelton*, 651 Fed. Appx. at 314; *McFarland*, 356 F.3d at 711; *Monzo*, 281 F.3d at 579. For these reasons, petitioner is not entitled to relief on this claim.

37

## V.    Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**.  Rule 8,

Rules Governing § 2254 Cases in the United States District Courts.


Dated:  October 16, 2017                    /s/ Ray Kent_____
                                            RAY KENT
                                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).